**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| LESLIE MAXIE,<br><br>      Plaintiff,<br><br>      v.<br><br>QVC GROUP INC. f/k/a QURATE RETAIL INC., *et al.*,<br><br>      Defendants. | Civil Action No. 25-3024 (MAS) (JTQ)<br><br>**MEMORANDUM OPINION** |

**SHIPP, District Judge**

  This matter comes before the Court on Defendants' QVC Group Inc. f/k/a Qurate Retail Inc. ("QVCGI") and QVC, Inc. ("QVC" and collectively with QVCGI, "Defendants") Motion to Dismiss (ECF No. 12) Plaintiff Leslie Maxie's ("Plaintiff") First Amended Complaint ("FAC") (ECF No. 5). Plaintiff opposed (ECF No. 18), and Defendants replied (ECF No. 20). Plaintiff filed a sur-reply (ECF No. 25) and Defendants responded (ECF No. 26). The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1(b). For the reasons stated below, the Court grants Defendants' Motion to Dismiss.

**I. BACKGROUND**[1]

  **A. Factual Background**

  Plaintiff, a New Jersey resident, has had a television career since she was nine years old. (FAC ¶¶ 17, 28-31, ECF No. 5.) Plaintiff created a lifestyle brand and "movement" called Not

---

[1] For the purpose of considering the instant motion, the Court accepts all factual allegations in the FAC as true. *See Phillips v. County of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

Your Mamas 50 ("NYM50"), in 2017, to establish a platform where women over 50 can be the focus and advocate for the causes that are important to them. (*Id.* ¶¶ 5, 32.) Following a keynote address that Plaintiff gave outside the state of New Jersey, Sue Schick ("Schick"), then a Senior Vice President of Content and Broadcast Production at QVC, greeted her. (*See id.* ¶¶ 34-35.) Schick asked Plaintiff if she ever thought about hosting for QVC. (*Id.* ¶ 37.) Plaintiff explained that she had been asked before but her vision was to position NYM50 to partner with QVC as a brand. (*Id.* ¶ 38.)

On July 27, 2022, Plaintiff met with executives and auditioned at QVC offices in Pennsylvania. (*See id.* ¶¶ 24, 40.) First, Plaintiff met with Lisa Morrissey ("Morrissey"), Senior Vice President of Merchandising, and Rachel Ungaro ("Ungaro"), Vice President of Commerce. (*Id.* ¶¶ 42-43.) During this meeting, Morrissey and Ungaro "asked thoughtful[,] probing questions, took copious notes," and "spoke of their desire to lean into the adaptive space[,] but shared no insight [into] how they would" do so. (*Id.* ¶¶ 45-46.) Plaintiff asked specific questions regarding what "lean[ing] into the adaptive space" would look like, but Morrissey and Ungaro did not provide answers. (*See id.* ¶¶ 46-49.)

That same day, Plaintiff also met with Beverly Brettman ("Brettman"), Director of Video Commerce and Operations, who offered Plaintiff a QVC Streaming show about NYM50. (*Id.* ¶¶ 50-51.) When Brettman was informed that Plaintiff had spoken with Morrissey and Ungaro earlier that day she told Plaintiff that "if you are going to work on Big QVC you won't be able to work on St[r]eaming." (*Id.* ¶ 52.) Plaintiff responded that "[i]t would make sense to start the conversation on QVC [channels] 1 & 2, and . . . then bring the women over to QVC Streaming . . . [and] dig into the women's story." (*Id.* ¶ 53.) Brettman asked Plaintiff to create a proposal which Plaintiff sent less than a week later. (*Id.* ¶¶ 55-56.)

2

Later that day, Plaintiff performed a series of in-depth auditions. (*Id.* ¶ 57.) Following the audition, Plaintiff interviewed with Schick, who extended an offer to Plaintiff to host on QVC channels 1 & 2. (*Id.* ¶ 59.) Plaintiff declined the offer and instead asked to have a "brainstorming meeting" with the "individuals . . . she had already auditioned for and interviewed with." (*Id.* ¶¶ 60-61.) Schick informed Plaintiff that she would work swiftly to coordinate a follow up meeting. (*Id.* ¶ 67.) Following the in-person meetings, Plaintiff sent thank you e-mail messages to the people she met and interviewed with. (*Id.* ¶ 68.)

The next day, Plaintiff sent Schick an invite to join the private Facebook group: NYM50 community. (*Id.* ¶ 65.) Plaintiff also sent a Facebook invite to Brettman, who joined the group. (*Id.* ¶ 66.) Plaintiff did not hear from Schick for several weeks, before Schick reached out in August of 2022, requesting an invite to the NYM50 Facebook group so she could join and invite several of her colleagues. (*Id.* ¶¶ 70-71.) Plaintiff sent the second invite that day. (*Id.* ¶ 72.) The request for the invite was the last Plaintiff heard from Schick, who never accepted the invite to join the group. (*Id.* ¶ 73.)

Then, on August 31, 2022, Plaintiff received an e-mail message from Brettman offering her a five-episode mini-series on QVC Streaming for a NYM50 show. (*Id.* ¶ 74.) Over the next four and a half months, Plaintiff had "sporadic contact" with Brettman, who promised Plaintiff she would receive a draft contract soon. (*Id.* ¶ 76.) During that time, Plaintiff had several conversations, e-mail message correspondences, and a video call regarding the draft contract before deciding not to move forward with the program because another new QVC show titled Fab50+, with a different host, Mally Roncal, was too similar to NYM50. (*Id.* ¶¶ 77-91.)

**B.     Procedural Background**

Plaintiff initially filed a Complaint on April 22, 2025. (Compl., ECF No. 1.) Plaintiff subsequently filed the operative FAC that same day. (*See* FAC.) The FAC alleges two causes of action: (1) fraudulent inducement ("Count One"); and (2) unjust enrichment ("Count Two"). (FAC ¶¶ 92-105.) Defendants filed the instant Motion to Dismiss on May 15, 2025. (Mot. to Dismiss, ECF No. 12.) Plaintiff opposed (Pl.'s Opp'n Br., ECF No. 18), and Defendants replied (Defs.' Reply Br., ECF No. 20). Plaintiff filed a sur-reply (Pl.'s Reply Br., ECF No. 25) and Defendants responded (Defs.' Resp. Br., ECF No. 26).

**II.    <u>LEGAL STANDARD</u>**

Pursuant to Federal Rule of Civil Procedure[2] 12(b)(2), a defendant may move to dismiss an action for lack of personal jurisdiction. "[O]nce a defendant has raised a jurisdictional defense, the plaintiff must prov[e] by affidavits or other competent evidence that jurisdiction is proper." *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009) (second alteration in original) (internal quotation marks and citations omitted). In a diversity action, a New Jersey federal court "has jurisdiction over parties to the extent provided under New Jersey state law." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 96 (3d Cir. 2004) (citations omitted). "New Jersey's long-arm statute provides for jurisdiction coextensive with the due process requirements of the United States Constitution." *Id.* (citations omitted). "Thus, parties who have constitutionally sufficient 'minimum contacts' with New Jersey are subject to suit there." *Id.* (citation omitted).

---

[2] All references to "Rule" or "Rules" hereafter refer to the Federal Rules of Civil Procedure.

4

A federal district court may exercise two types of personal jurisdiction: general jurisdiction and specific jurisdiction. *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 317 (3d Cir. 2007) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-15, 414 n.9 (1984)).

General jurisdiction exists when a defendant's "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). "The 'paradigm' forums in which a corporate defendant is 'at home' . . . are the corporation's place of incorporation and its principal place of business." *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 413 (2017) (citing *Daimler*, 571 U.S. at 137). Specific jurisdiction allows a court to exercise jurisdiction over a non-resident defendant where: (1) the defendant "purposefully avail[ed] itself of the privilege of conducting activities within the forum"; (2) the litigation "aris[es] out of or relate[s] to the defendant's contacts with the forum"; and (3) the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." *Goodyear*, 564 U.S. at 923-24 (alterations in original) (citations omitted).

When the district court does not hold an evidentiary hearing, "the plaintiff need only establish a prima facie case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor." *Miller Yacht Sales*, 384 F.3d at 97 (citations omitted). Still, the plaintiff must establish "with reasonable particularity sufficient contacts between the defendant and the forum state" to support jurisdiction. *Mellon Bank (E.) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992) (quoting *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987)). And the plaintiff must establish these "jurisdictional facts through sworn affidavits or other competent evidence . . . . [A]t no point may a plaintiff rely on the bare pleadings alone in order to withstand a defendant's Rule 12(b)(2)

motion to dismiss for lack of [personal] jurisdiction." *Miller Yacht Sales*, 384 F.3d at 101 n.6 (Scirica, J., concurring) (first and second alteration in original) (internal citation and quotation marks omitted). Indeed, the plaintiff must respond to the defendant's motion with "actual proofs"; "affidavits which parrot and do no more than restate [the] plaintiff's allegations . . . do not end the inquiry." *Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 66 n.9 (3d Cir. 1984). If the plaintiff meets this burden, the burden shifts to the defendant, who must make a compelling case that the exercise of jurisdiction would be unreasonable. *Mellon Bank*, 960 F.2d at 1226 (citations omitted).

**III.   DISCUSSION**

Defendants make two arguments in support of dismissing the FAC: (1) this Court lacks personal jurisdiction over Defendants; and (2) Plaintiff fails to state a claim upon which relief can be granted. (*See generally* Defs.' Moving Br., ECF No. 12-1.) The Court addresses each argument in turn.

To establish general jurisdiction over a defendant, a plaintiff must show that the defendant is essentially "at home" in the state a lawsuit is filed. *Daimler*, 571 U.S. at 122. As mentioned previously, "[t]he 'paradigm' forums in which a corporate defendant is 'at home' . . . are the corporation's place of incorporation and its principal place of business." *BNSF*, 581 U.S. at 413 (citing *Daimler*, 571 U.S. at 137); *see also Chavez v. Dole Food Co.*, 836 F.3d 205, 223 (3d Cir. 2016). Here, Defendants are both foreign corporations with their principal places of business in Pennsylvania and Colorado. (FAC ¶¶ 18-19.) The Court, accordingly, does not have general jurisdiction over Defendants. *See BNSF*, 581 U.S. at 413 (citing *Daimler*, 571 U.S. at 137).

To assert specific personal jurisdiction, Plaintiff must allege "claim-specific jurisdiction over Defendants," meaning "an affiliatio[n] between the forum and the underlying controversy."

*Christie v. Nat'l Inst. for Newman Stud.*, 258 F. Supp. 3d 494, 499 (D.N.J. 2017) (alteration in original) (quoting *Walden v. Fiore*, 571 U.S. 277, 283 n.6 (2014)). Plaintiff alleges claims of fraudulent inducement and unjust enrichment. (FAC ¶¶ 92-105.) Because specific jurisdiction analysis is claim-specific, the Court analyzes the claims separately. *See Remick v. Manfredy*, 238 F.3d 248, 255 (3d Cir. 2001) (holding that the district court should conduct "a claim-specific analysis" when "there are different considerations in analyzing jurisdiction over" those claims).

### A. Plaintiff's Unjust Enrichment Claim

For unjust enrichment claims, courts employ the traditional three-part test for specific jurisdiction outlined below:

> First, the defendant must have purposefully availed itself of the privilege of conducting activities within the forum. Second, "plaintiffs' claims must arise out of or relate to at least one of the contacts with the forum." Third, the exercise of jurisdiction must comport with traditional notions of fair play and substantial justice.

*Harrison v. Nerveda, LLC*, No. 15-1373, 2015 WL 5138478, at *4 (D.N.J. Aug. 31, 2015) (first quoting *HS Real Co. v. Sher*, 526 F. App'x 203, 206 (3d Cir. 2013); then citing *O'Connor*, 496 F.3d at 317). Notably, the first prong is a threshold inquiry, and the Court need not consider the third prong if the first two prongs are unmet. *See Bit Holdings Fifty-One, Inc. v. Ultimate Franchises, Inc.*, No. 18-11010, 2019 WL 2296052, at *4 (D.N.J. May 30, 2019) (citation omitted). Moreover, "[a] contract alone between a resident and a non-resident, does not automatically establish sufficient minimum contacts to exercise jurisdiction over the non-resident." *Days Inn Worldwide v. Miller*, No. 13-3276, 2014 WL 6485923, at *2 (D.N.J. Nov. 19, 2014) (quoting *Cole v. McGuire Bros. Const., Inc.*, No. 05–678, 2005 WL 3077902, at *5 (D.N.J. Nov.15, 2005)). The Court notes that other than citing the standard of the test, Plaintiff makes no argument regarding the traditional test in her Opposition Brief. (*See* Pl.'s Opp'n Br. 2-7.) Under this test, moreover,

7

Plaintiff has not alleged any contacts between Defendants and New Jersey. (*See generally* FAC.) Plaintiff relies on an affidavit attached to her Opposition Brief stating that: (1) Defendants knew Plaintiff lived in New Jersey for various reasons; (2) Plaintiff "exchanged 142" e-mail messages with QVC employees; (3) Plaintiff exchanged 11 phone calls with QVC employees; and (4) "many (if not most) . . . of th[is] correspondence[] . . . w[as] initiated by [Defendants.]" (Ex. 1 to Pl.'s Opp'n Br., Maxie Aff. ¶¶ 10-20, ECF No. 18-1.) None of these actions involved Defendants or their employees being physically in New Jersey. (*Id.*) Plaintiff's unjust enrichment claim, moreover, is premised on the meetings and interview that took place in Pennsylvania, as well as the written pitch Plaintiff sent to Defendant that was requested during those same in-person meetings in Pennsylvania. (FAC ¶¶ 55, 101-05; Brettman Dec. ¶¶ 6-10, ECF No. 12-2.)

These contacts do not show that Defendants purposefully availed themselves of New Jersey, or that Plaintiff's claims arise out of or relate to Defendants' contacts with New Jersey. In fact, Plaintiff's allegations show that Defendants took no actions in or towards New Jersey. *See Proteonomix, Inc. v. Crompton*, No. 09-266, 2009 WL 10728610, at *2 (D.N.J. Nov. 10, 2009) ("Communications via telephone, email, or mail will not by themselves trigger personal jurisdiction."); *see also Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 455 (3d Cir. 2003) (finding that letters and telephonic communication to a plaintiff located in New Jersey were insufficient to establish personal jurisdiction without purposeful availment); *Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prods. Co.*, 75 F.3d 147, 152 (3d Cir. 1996) (stating that communications in furtherance of a contract do "not establish the purposeful activity necessary for a valid assertion of personal jurisdiction" (quoting *Sunbelt Corp. v. Noble, Denton & Assocs., Inc.*, 5 F.3d 28, 32 (3d Cir. 1993))). The Court, accordingly, cannot exercise personal jurisdiction over Defendants pursuant to the traditional test.

B.   **Plaintiff's Fraudulent Inducement Claim**

In cases of intentional torts such as Plaintiff's fraudulent inducement claim, a court may exercise personal jurisdiction when the so-called "*Calder* effects test" is satisfied, which stems from the Supreme Court's decision in *Calder v. Jones*, 465 U.S. 783 (1984). *See Christie*, 258 F. Supp. 3d at 500. That test requires a plaintiff to allege that:

> (1) The defendant committed an intentional tort;
>
> (2) The plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort; [and]
>
> (3) The defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity. . . .

*Id.* (quoting *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 265-66 (3d Cir. 1998)). The Supreme Court has clarified that for the second and third prongs of the *Calder* effects test, the inquiry must focus on "whether the defendant's conduct connects him to the forum in a meaningful way." *Walden*, 571 U.S. at 290. Further, to meet the *Calder* test's third prong, it is not sufficient that a plaintiff merely "establish that defendant knew that plaintiff was located in a particular forum." *Cabot Corp. v. Niotan, Inc.*, No. 08-1691, 2011 WL 4625269, at *14 (E.D. Pa. Sep. 30, 2011). The plaintiff must also "point to specific activity indicating that the defendant expressly aimed its tortious conduct at the forum." *IMO Indus., Inc.*, 155 F.3d at 266.

Again, Plaintiff has alleged nothing to show that Defendants or their actions had anything to do with New Jersey. (*See generally* FAC.) Plaintiff's argument rests on the fact that she resides in New Jersey and Defendants' employees knew so while attempting to negotiate with Plaintiff

regarding NYM50, (*see, e.g.*, Pl.'s Opp'n Br. 2-7; Pl.'s Reply Br.³ 4-12), and that a draft contract between the parties lists her LLC's address as being located in New Jersey (Ex. A to Maxie Decl.). There are simply no allegations regarding New Jersey other than Plaintiff's allegation that "[v]enue is proper in the District of New Jersey" because "Plaintiff is a resident of New Jersey, and the alleged tortious actions were directed at a resident of the State of New Jersey." (FAC ¶ 27.) As discussed above, Plaintiff states in her affidavit that: (1) Defendants knew Plaintiff lived in New Jersey for various reasons; (2) Plaintiff "exchanged 142" e-mail messages with QVC employees; (3) Plaintiff exchanged 11 phone calls with QVC employees; and (4) "many (if not most) . . . of th[is] correspondence[] . . . w[as] initiated by [Defendants.]" (Maxie Aff. ¶¶ 10-20.) Plaintiff also attaches a draft of the proposed contract between the parties which lists Maxie Media Group LLC's address as being located in New Jersey. (Ex. A to Maxie Aff.) These allegations, however, do not show that New Jersey was the focal point of Defendants' alleged tortious conduct, and thus are not enough to establish personal jurisdiction over Defendants. "Even assuming that Plaintiff[] felt the brunt of the harm in New Jersey, that, without more, is insufficient for this Court to find that it has personal jurisdiction over Defendant[s] in the absence of facts establishing that Defendant deliberately targeted New Jersey." *Stewart v. Stuckey-Smith*, No. 22-4553, 2022 WL 17069966, at *7 (D.N.J. Oct. 28, 2022), *report and recommendation adopted*, No. 22-4553, 2022 WL 17069697 (D.N.J. Nov. 17, 2022); *see also Marten v. Godwin*, 499 F.3d 290, 298-99 (3d Cir. 2007) (noting that a plaintiff must also present facts establishing that the defendant aimed its

---

³ Plaintiff argues that QVC had outlet retail stores in New Jersey until recently and ran tours which made stops in the state last summer. (Pl.'s Reply Br. 7.) These "contacts" with the forum, however, do not change this Court's analysis. *See, e.g.*, *DeFazio v. Wells Fargo Bank Nat'l Ass'n*, No. 20-375, 2020 WL 1888252, at *7 (D.N.J. Apr. 16, 2020) (explaining that "defendant's 'suit-related conduct must create a substantial connection with the forum state' . . . for specific jurisdiction to exist" (quoting *Walden*, 571 U.S. at 284)).

tortious conduct to that forum, knowing that the plaintiff would suffer harm there); *Aquino v. Breede*, No. 23-2459, 2024 WL 4238893, at *2 (D.N.J. Sep. 19, 2024), *aff'd*, No. 24-2941, 2025 WL 2058876 (3d Cir. July 23, 2025) (finding no specific personal jurisdiction based on: defendant's knowledge that plaintiff was a New Jersey resident; defendant's initiation of phone calls and e-mail messages to plaintiff; and defendant's belief that the contract with plaintiff would be performed in New Jersey).

The Court therefore cannot exercise personal jurisdiction over Defendants and Plaintiff's FAC is dismissed.[4]

## IV.   CONCLUSION

For the reasons set forth herein, Defendants' Motion to Dismiss is granted, and the FAC is dismissed without prejudice. The Court will issue an Order consistent with this Memorandum Opinion.

/s/ Michael A. Shipp
MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

DATED: 12/12/25

---

[4] Because the Court does not have personal jurisdiction over Defendants, it does not reach Defendants' arguments that Plaintiff has failed to state a claim.